# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 21, 2017          Decided June 13, 2017

No. 16-1200

UNITED AIRLINES, INC.,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENT

On Petition for Review of a Decision of
the Transportation Security Administration

*Adam P. Feinberg* argued the cause for petitioner. With him on the briefs was *Adam W. Braskich*.

*Jeffrey Clair*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Scott R. McIntosh*, Attorney.

Before: BROWN and PILLARD, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Petitioner United Airlines sought refunds from the Department of Homeland Security's Transportation Security Administration (TSA) for overpayments it made to TSA. These payments relate to fees charged airline passengers that fund aviation security expenses and are to be remitted to TSA. In an informal adjudication, TSA refused to consider Petitioner's refund request because four years before TSA had concluded an audit of United's remittances during the relevant period, the audit did not discover any overpayments, and United had not objected to the report of the audit. We conclude, however, that TSA's position is unsupportable.

**I.**

The Aviation and Transportation Security Act created TSA and tasked the agency with civil aviation security.[1] To fund some of its security measures, the TSA is required to impose a per-passenger fee on travelers, which is collected by the airlines and remitted to the agency.[2] The agency conducts audits pursuant to its statutory authority to require airlines to provide information "necessary to verify that fees have been collected and remitted at the proper times and in the proper amounts."[3] (Two regulations govern the audit process: carriers must establish a system to account for the fees collected and remitted, and the agency may conduct audits to ensure that the security

---

[1] *See* 49 U.S.C. § 114; *see also* 6 U.S.C. § 203(2) (transferring TSA to Department of Homeland Security).

[2] *See* 49 U.S.C. § 44940(a)(1); *id.* § 44940(e).

[3] *Id*. § 44940(e)(4).

service fees are accurately collected and remitted.[4]) The Act provides that the agency "may refund any fee paid by mistake or any amount paid in excess of that required."[5]

United Airlines claimed a refund after it hired an outside consultant to review payments it had made to TSA. The consultant determined that Petitioner had overpaid the agency during 2010, 2011, and 2012 in the amount of $1.5 million.[6] On April 8, 2016, the consultant sent an email to TSA requesting a refund. He included in the email all of the data and calculations supporting the request. On April 18, 2016, ten days after receiving the refund request, TSA denied it. According to TSA, Petitioner's problem was that TSA had already conducted an audit for the relevant time period. That audit was conducted in 2012 "to evaluate the accuracy and reliability of [the fees] imposed, collected, recorded, refunded, remitted, and reported . . . for the periods in which [Petitioner] is seeking to re-examine." It was determined that Petitioner owed the agency $3.07, which Petitioner promptly paid following a final exit

---

[4] *See* 49 C.F.R. § 1510.15(a); *id.* § 1510.19.

[5] 49 U.S.C. § 44940(g).

[6] The consultant discovered that Petitioner had incorrectly calculated the fees owed to TSA based on two different errors. First, Petitioner paid approximately $1 million to the agency for passengers that were involuntarily transferred to Petitioner's flights. The original carrier that sold the ticket, not Petitioner, was responsible for collecting and remitting those payments. *See* 49 U.S.C. § 44940(e)(2). Second, Petitioner overpaid approximately $500,000 due to foreign currency fluctuation that occurred during the time period after collection and before remittance.

conference. Therefore, TSA concluded that United had "accepted and agreed with" the agency's audit findings.

Shortly thereafter, Petitioner responded to TSA's denial. Petitioner "request[ed] [TSA's] guidance concerning the TSA's rules and procedures for obtaining . . . administrative review," and Petitioner suggested that it was "hoping to keep this matter within TSA's administrative review process." It requested a response from the agency within four days. When it did not receive a reply, Petitioner filed this petition for review, identifying the April 18 Refund Denial as the agency decision under review.

On August 10, 2016, after this petition for review was filed and two months after the Petitioner's second request, TSA finally responded. The agency again pointed out that Petitioner had been the subject of an audit of the fees collected during the contested period, and that the audit report stated that Petitioner had thirty days to submit an administrative appeal. Instead, it only paid the trivial sum owed, $3.07. Nor did United file a petition for review before us within sixty days of TSA's audit— which TSA described as its "final order." Then, TSA concluded: "Given the foregoing, TSA has determined that United has no entitlement to administrative review or judicial review."

## II.

We are met with a jurisdictional objection. The government argues that since Petitioner's request for administrative review was pending when the petition was filed in our court, the petition was incurably premature, and we should therefore dismiss it. *See TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989). This contention is a rather thin one; it depends on

the interpretation of Petitioner's June 6 letter which, in relevant part, stated:

> On behalf of our client, we respectfully disagree with this action and request review of the TSA's determination. To this end, we request your guidance concerning the TSA's rules and procedures for obtaining such administrative review.

> Because we are hoping to keep this matter within TSA's administrative review process, we ask for your reply by June 10, 2016.

It's clear, then, that Petitioner *wished* to seek administrative review, but it is also clear that Petitioner wanted to learn how to do so *before* it pulled the trigger. After all, there were no general regulations describing a procedure for exhaustion of administrative remedies. (The thirty-day period to appeal the audit would be relevant only if Petitioner was challenging the audit.) And Petitioner's specific request for a quick response was obviously designed to allow a petition to our court within the sixty-day period for review of an agency final order, i.e., the April 18 Refund Denial.[7] In sum, the challenge to our jurisdiction barely passes the frivolous.

The rest of the case turns on the significance of the 2012 audit. Petitioner contends that a fair interpretation of the statute authorizing TSA's audit, as well as TSA's regulations implementing the statute, led United to understand the purpose of TSA audits was solely to determine whether carriers had remitted a sufficient amount to TSA to satisfy their obligation.

---

[7] *See* 49 U.S.C. § 46110(a).

And that the statutory authority allowing the Under Secretary to issue refunds to carriers because of mistakes is a wholly independent legal authority.  The government contends, on the other hand, that the audit was designed to be symmetrical to determine whether a carrier has either underpaid or overpaid during the period covered by the audit.  If the government were correct, then its argument that it had virtually unreviewable discretion whether to "reopen" the audit might be persuasive.

But the government is not correct.  First of all, TSA has never indicated to the regulated carriers that an audit had the double purpose.  Indeed the audit report stated that its purpose was to assess compliance with the security fee regulations.  It concluded that the security fee "was correctly imposed, collected, and remitted to the TSA" (with the exception of $3.07).  An audit typically seeks to verify information for a particular reason.  Here, the audit sought to verify that Petitioner was collecting the security fee from passengers and remitting the collected fees to TSA.  Nothing about the audit suggested it also examined whether the airline was too generous in identifying tickets subject to the fee or in calculating currency exchange rates bearing on the amounts it owed.[8]  We therefore reject the notion that Petitioner's request for a refund was a tardy effort to reopen the audit.

Putting aside the audit as irrelevant, there still remains the question whether it was arbitrary and capricious for the Under Secretary to refuse to pay a refund, as he is statutorily

---

[8] If the audit was meant to be symmetrical, i.e., the liability could have been negative, it was incumbent on the agency to make that clear.

authorized—but not commanded—to do.[9]  The government argues that revisiting liability four years old would burden the agency's enforcement resources; a carrier should not be permitted to sit on relevant data for years before bringing the claim to the agency's attention.  That argument is not without merit, but it would have much more force if an agency regulation, or some other method of giving notice, would indicate how long is too long.[10]

The government also contends that granting a refund to United would somehow prejudice other airlines.  We simply do not understand this argument—at all.[11]

Therefore, we remand to TSA for proceedings consistent with this opinion.

*So ordered.*

---

[9] *See* 49 U.S.C. § 44940(g).

[10] On that point, Petitioner also contends that if the agency wished to make the audit symmetrical or otherwise define the scope and consequences of the audit, it needed to do so through notice-and-comment rulemaking.  We need not reach the question of whether notice may be effectuated through a means other than rulemaking.

[11] For those overpayments due to involuntary transfers, there is no reason to suspect that the carrier that sold the original ticket did not *also* pay TSA, i.e., it is equally likely that TSA was paid double.  TSA would, then, have no discernable reason to go around "reopening" those other audits.